IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RANDY SALGADO,

        Petitioner,

v.                                                   **No. 20-cv-00899 JCH/JFR**

RICK MARTINEZ, Warden of the
Otero County Prison Facility, and
HECTOR H. BALDERAS, Attorney
General for the State of New Mexico,

        Respondent.

ORDER ADOPTING MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on the Proposed Findings and Recommended Disposition (PFRD) by United States Magistrate Judge John F. Robbenhaar, filed November 28, 2022. Doc. 22. As per Fed. R. Civ. P. 72(b)(2) and 6(d), objections were due no later than December 15, 2022. Petitioner filed his objections on that date, urging the Court to reject the PFRD. Doc. 23. Respondents have not filed objections or a response to Petitioner's objections. The Court has conducted its *de novo* review of the case, including a thorough review of the evidence of record, and has considered each of Petitioner's objections. The Court overrules Petitioner's objections as not supported by fact or law. The Court therefore will adopt the PFRD in its entirety.

    1. PFRD

        In the PFRD (Doc. 22), Judge Robbenhaar found the Petition presented both exhausted and unexhausted claims, but concluded that deciding the Petition—rather than holding the matter in abeyance and allowing Petitioner the opportunity to pursue the unexhausted claims in State court— was warranted. Judge Robbenhaar determined that Petitioner's sufficiency of the evidence claims

1

fail, there was no violation of Petitioner's right to confront the witnesses who testified against him, Petitioner received effective assistance of counsel, and the jury which heard and decided Petitioner's case was impartial and did not suffer from implied bias.   Judge Robbenhaar recommended that the Court deny Petitioner's § 2254 Petition, deny the issuance of a Certificate of Appealability, and dismiss the Petition with prejudice.

2.   LEGAL STANDARDS FOR REVIEW OF MAGISTRATE JUDGE'S REPORT

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district judge may designate a magistrate judge to submit proposed findings of fact and recommendations for the disposition of any case pending before the Court, including habeas cases.  Where a party timely objects to the magistrate judge's proposed disposition, this Court conducts a *de novo* review of all portions of the recommendation which have been objected to and "may accept, reject, or modify, in whole or in part, the findings or recommendations."  *See id.* § 636(b)(1)(C).  *De novo* review requires the district judge to consider relevant evidence of record and not merely to review the magistrate judge's recommendation.  *In re Griego*, 64 F.3d 583-84 (10th Cir. 1995).  "[A] party's objections to the magistrate judge's [PFRD] must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents*, 73 F.3d 1057, 1060 (10th Cir. 1996).  In other words, failure to make a timely and specific objection to a PFRD or any individual aspect of it waives *de novo* or appellate review.

3.   IT WAS PROPER FOR THE MAGISTRATE JUDGE TO REVIEW ALL CLAIMS IN THIS MIXED PETITION

As an initial matter, the Magistrate Judge found that the Petition presents both exhausted and unexhausted claims.  Doc. 22 at 12-14.  In response, Petitioner claims that, even though they are not a "verbatim recitation," the claims he presents in his § 2254 petition were sufficiently

considered by the State courts.  Doc. 23 at 2.  Petitioner argues the New Mexico Court of Appeals considered: the propriety of seating A.H. as a juror; whether there was sufficient evidence to support the jury verdicts; and whether R.S.'s (lack of) testimony was sufficient to support a conviction for criminal sexual contact of a minor.  *Id.* at 3.  Notably, Petitioner does not address whether the alleged confrontation clause violation was also considered by the state courts.

Having reviewed the record, the Court agrees with the Magistrate Judge that two of the issues presented—the alleged Confrontation Clause violation created by the minor victims' testimony, and the seating of A.H. on the jury without objection—were not fully presented in the state courts.  First, in opposing proposed summary affirmance by the New Mexico Court of Appeals, Petitioner argued (1) ineffective assistance of counsel (for failure to move to sever charges and failure to impeach several witnesses), (2) improper denial of a requested jury instruction, (3) sufficiency of the evidence (given that the case was a classic "he said // she said" case), and (4) violation of Petitioner's right to a fair and impartial jury panel caused by the trial court's seating procedures (but no mention of the seating of A.H.).  *See* 12-1 at 161-175 ("Memorandum in Opposition").  Next, in his Amended Petition for a Writ of Habeas Corpus filed in the State of New Mexico's Second Judicial District Court, Petitioner presented largely the same arguments as considered by the Court of Appeals, and again failed to specifically address either the confrontation clause claim or the seating of A.H. as a juror.  *See* Doc. 12-3 at 313-338 ("Amended Petition").  The record clearly demonstrates that these two issues have not been exhausted.

Even so, Petitioner acknowledges that the PFRD's finding of lack of exhaustion makes little difference, given that the Magistrate Judge still considered all claims raised as Petitioner desires.  Petitioner now asks this Court to also consider the issues but find that Petitioner exhausted

his claims in state court.  Doc. 23 at 3.  The Court will deny Petitioner's request to find that all claims presented in his § 2254 Petition have been exhausted, but will consider the claims as Petitioner requests.  The Court agrees with the Magistrate Judge that dismissing the Petition without prejudice and holding the proceedings in abeyance while Petitioner returns to state court makes little sense, given that neither unexhausted issue raises a colorable federal claim and addressing then now serves the interests of all individuals and entities involved.  *See Hoxsie v. Kerby*, 108 F.3d 1239, 1242-43 (10th Cir. 1997).

    4.   PETITIONER'S OBJECTIONS

Petitioner's claims, and objections to the PFRD, generally comprise two categories: (1) sufficiency of the evidence, including an alleged Confrontation Clause violation when victim R.S. failed to identify Petitioner at trial and failed to testify to an illegal touching; and (2) various claims of ineffective assistance of counsel, including trial counsel's decision to seat A.H., an allegedly biased juror.  The Court will address each category separately.

    a.   Whether There Was Sufficient Evidence To Support The Convictions, And Whether Petitioner Suffered A Violation Of His Confrontation Clause Right

In federal habeas proceedings, the appropriate inquiry into a sufficiency-of-the-evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).  AEDPA additionally directs that, where the state court has already addressed the claim, this court's review is further limited.  *See Valdez v. Ward,* 219 F.3d 1222, 1237 (10th Cir. 2000).  The *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

Here, Petitioner presents two claims that are based on sufficiency of the evidence.  First, Petitioner argues that the prosecution introduced insufficient proof to establish criminal conduct occurred during the charging period.  Petitioner claims the state failed to present evidence that connected Petitioner to the victims during the charging period, and that the Magistrate Judge relied upon the Court of Appeals' "empty affirmance."  Doc. 23 at 8.  Second, because R.S. did not specifically testify to facts that support criminal sexual conduct of a minor (CSCM) as charged in Count 2 of the Indictment, Petitioner claims the evidence is insufficient to support a conviction of that charge.  Petitioner argues that, because R.S. did not testify that Petitioner touched her vagina, T.R.'s testimony was not substantial nor corroborative of any crime testified to by R.S and, therefore, the jury had no evidence to weigh and no credibility to judge.  *Id.* at 4-5.  Petitioner states that "the jury's determination is clearly the result of speculation and conjecture." *Id.*  Finally, Petitioner argues that R.S.'s failure to offer specific testimony prevented his trial counsel from adequately cross-examining R.S. on the crucial element of criminal sexual contact, which resulted in a violation of his right to confront his accusers.

The Court is not persuaded.  The Magistrate Judge reviewed the evidence presented at trial, including the testimony of both minor victims R.S. and T.R.  At trial, R.S. testified and was subject to cross-examination by Petitioner's counsel.  R.S. provided details of the criminal conduct, including that "Randy" "made us take off our clothes, and he stuck his privates in my mouth." *Id.* at 304.  R.S. also stated that the latter incident occurred in the living room where she had been sleeping on the couch. *Id.* at 306.  Petitioner emphasizes that R.S. failed to identify Petitioner as the perpetrator, that she didn't say when "Randy" lived with her mother, and that she didn't testify that "Randy" touched her vagina.  Doc. 12-2 at 302-07.  For her part, T.R. established that she was present during the criminal assaults, she identified Petitioner as "Randy," and she stated that he

5

called her and her younger sister into their mom's room and had them both take their clothes off. *Id.* at 322.  T.R. stated that Randy touched her "in the privates," and "then he got my sister… touching her in the same place."  *Id.* at 322-23.  T.R. testified that Randy "grabbed me, my hand first, and then made me touch him in his private" and saw Randy make her sister R.S. "touch[ ] his private the same way I did*." Id.* at 324-25.

At trial, Petitioner cross-examined both girls and focused on statements they made prior to trial.  Counsel impeached R.S. with her prior description of "Randy," as someone she described as tall and skinny and with several specific and unique tattoos.  Doc. 1-12 at 13-17.  Counsel also inquired into a prior statement made by R.S., that she had never seen "Randy" touch her sister, to which R.S. stated she didn't remember saying that.  *Id.* at 16.  Counsel's cross-examination of T.R. focused on inconsistencies between her prior statement and that of her sister R.S., on her prior description of "Randy," and exposed her inability to remember whether "Randy" had tattoos, whether she was in school at the time, what season it was, what blankets were on the bed, whether the television was on or off.  Doc. 1-15 at 19-27.  Given that Petitioner's theory of the case was mistaken identity, counsel's cross-examination appears reasonable.

The Magistrate Judge also referenced other testimony that focused on whether Petitioner had access to the children during the charging period.  Doc. 22 at 3-4.  The testimony conflicted as to when Petitioner was in a relationship with the victims' mother.  Defense counsel presented the testimony of a family friend who testified that she remembered the victims' mother met Petitioner in 2001, after the charging period.  And counsel also introduced an unsworn, pretrial statement in which the girls' mother stated that Petitioner never abused her daughters or had access

to them.  Thus, counsel successfully presented the jury with direct testimony that questioned whether Petitioner had physical access to the minor victims during the stipulated charging period.[1]

Based on the testimony presented to it, the jury convicted Petitioner of the criminal charges, including CSCM as against R.S. as charged in Count 2 of the Indictment.  The Court of Appeals noted in its opinion that, despite Petitioner's denials, despite R.S.'s failure to identify Petitioner, and despite evidence that questioned whether Petitioner had access to the minor victims, the jury was not obligated to believe Petitioner's story.  Doc. 12-1 at 179-80.  While Petitioner insists that he lacked access to the victims during the charging period, the jury by its verdicts found otherwise. Furthermore, the appellate court rejected Petitioner's claim that the guilty verdicts were the product of conjecture, but concluded that the jury necessarily rejected Petitioner's claims of innocence.  *Id.* at 180.  The Court of Appeals concluded: "This Court is not at liberty to second-guess the jury's decision concerning the credibility of witnesses, to reweigh the evidence, or to substitute our judgment for that of the jury."  *Id.*

Like the New Mexico Court of Appeals, this Court is not in a position to second-guess a jury verdict.  *United States v. Sells,* 477 F.3d 1226, 1235 (10th Cir. 2007).  Indeed, the Court must draw all inferences in favor of the prosecution and grant relief only if it concludes that no reasonable trier of fact could have found all essential elements of the crime beyond a reasonable doubt.  *Hererra v. Collins,* 506 U.S. 390, 401 (1993) (citing *Jackson v. Virginia,* 443 U.S. 307 (1979)).  "A witness's lack of recollection does not constitute an inability to cross-examine." *United States v. Knox,* 124 F.3d 1360, 1364 (10th Cir. 1997).  The Sixth Amendment's Confrontation Clause "guarantees the *opportunity* for effective cross-examination, not cross-

---

[1] For its part. the state introduced the testimony of the victims' grandfather who testified that he saw Petitioner at the mother's house in the Fall of 2000, and daycare records that showed that R.S. and T.R. were in their mother's custody until September 2000.  *See* Doc. 22 at 3-4.

examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).  Here, the record supports the Magistrate Judge's conclusion that the jury could have rationally concluded that the prosecution satisfied its burden of proving each element of the crimes beyond a reasonable doubt. The Court agrees with the Magistrate Judge's conclusions that sufficient evidence supports Petitioner's convictions, and that Petitioner did not suffer a violation of his Sixth Amendment right to confront the witnesses against him.

b.   <u>Whether Petitioner Received Effective Assistance of Counsel</u>

Petitioner also objects to the Magistrate Judge's recommendation that his ineffective assistance of counsel claims be denied.  First, Petitioner argues that his lawyer was ineffective for failing to strike A.H. from the jury, either for cause or by using an available peremptory challenge. Doc. 23 at 7.  Petitioner states that his claim is not limited to A.H.'s past victimization but encompasses whether A.H.'s answers to voir dire questions showed an "indisputable question of impartiality."  *Id.*  Petitioner claims that his attorney's "mishandling" of juror responses, by attributing certain responses to wrong jurors, resulted in an impartial jury by A.H.'s inclusion.  *Id.* Finally, Petitioner claims that the PFRD ignored the logic and goals of the implied bias doctrine, which should have resulted in A.H.'s disqualification despite her assurances that she could remain impartial.  *Id.*

The Court's independent review of the record fails to demonstrate ineffective assistance by trial counsel.  While Petitioner claims "the facts [of implied bias] are well preserved within the record," he fails to cite to any of those facts.  Further, a decision to strike or not strike a potential juror rests within the strategic decisions that are vested in trial counsel.  *Cf. United States v. Moreno*, 655 F. App'x 708, 712-13 (10th Cir. 2016) (Unpubl.) (given "wide range of acceptable

professional conduct," no ineffective assistance based on trial counsel's failure to object when the trial court struck a juror).  Here, reasonable explanations might exist for counsel's desire to have A.H. on the jury.  Perhaps counsel surmised that A.H. could better detect fabrication by the complaining witnesses, given the personal story she related.  A.H. described an incident of "abuse" when she was a child, but she never described that abuse as sexual in nature, nor did she offer particular details of this prior experience.  And while A.H. did state that the experience "wasn't innocent," she assured the trial judge and the lawyers that she could be impartial in judging the facts of the case.  As found by the Magistrate Judge, the comments made by A.H. don't amount to the "extreme" case that "leave[s] serious question whether the trial court… subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice."  Doc. 22 at 19 (citing *Smith v. Phillips*, 455 U.S. 209, 222 (1982)); *see also United States v. Powell*, 226 F.3d 1181, 1188 (10th Cir. 2000) (emphasizing that a finding of implied bias must be reserved for especially extreme or unusual circumstances).  The Court sees no merit in this claim.

Petitioner next objects to the Magistrate Judge's rejection of his other claims of ineffective assistance.  Petitioner lists five instances of alleged IAC, Doc. 23 at 10, but fails to provide specific, substantive arguments as to any of the five, stating instead that the PFRD's "analysis of trial counsel's performance appears to have been caught up in the state district court's wake."  Doc. 23 at 10.  Petitioner notes that he lacked the tattoos that were described by R.S. during her safehouse interview, and concludes that "[i]dentifying the individual fitting R.S.'s description would have produced a different outcome."  Doc. 23 at 11.  Petitioner also points to the charging period, where direct evidence that could have been offered by counsel to distance the alleged criminal conduct out of the charging period was lacking, leaving "the jury's imagination [to run] unfettered."  Doc. 23 at 11.  Finally, Petitioner points to trial counsel's failure to secure the testimony of the minor

victims' mother, whose testimony he claims "was the only means of providing the jury with answers to a number of unanswered questions." *Id.* What those "unanswered questions" are, however, remain anyone's guess.

Petitioner's argument that his trial counsel was ineffective necessarily fails, as he is unable to demonstrate resulting prejudice. As noted by the Magistrate Judge, the state judge in habeas proceedings evaluated Petitioner's claims under the *Strickland* deficient performance and prejudice analysis, to conclude that the issues raised do not demonstrate that Petitioner suffered prejudice. Doc. 12-3 at 780-88. The state judge concluded:

> Petitioner's arguments are ultimately directed at his trial counsel's defense strategy and how the case was presented to the jury. As noted above, these complaints deal with strategy and trial tactics which this Court is not inclined to second-guess. Taking into account the facts known to trial counsel at the time, and trial counsel's stated reasons for the actions taken, the Court cannot conclude that counsel's strategy decisions were unreasonable. While [the expert witness] testified to a myriad of motions that could have been filed and different avenues of investigation that could have been pursued, trial counsel testified that he filed those motions he believed were appropriate and followed a strategic defense he thought had the most chance for success. Petitioner's claims for ineffective assistance of counsel fail.

Doc. 12-3 at 787-88 (internal citations omitted). The state district court's conclusion is due great deference. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (discussing "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt")); 28 U.S.C. § 2254(d). The question under consideration is whether denial of habeas relief by the state district court was objectively unreasonable. *Cf. Williams v. Taylor*, 529 U.S. 362, 409 (2000) (court must ask 'whether the state court's application of clearly established federal law was objectively unreasonable."). There is nothing in this record to suggest that it was so.[2]

---

[2] Indeed, the record demonstrates that trial counsel acted reasonably. Counsel presented an understandable theory of the case to the jury (misidentification), evaluated how certain evidence supported this theory and determined whether to seek its introduction, and cross-examined the witnesses including the minor victims consistent with that theory; in

Like the Magistrate Judge, this Court is not in a position to second-guess state court conclusions that are reasoned and supported by the record evidence.  The Court finds no error in the Magistrate Judge's conclusion that Petitioner's trial counsel provided effective assistance.

5.  Whether The Magistrate Judge's Recommendation Against Issuance Of A Certificate Of Appealability (COA) Is Appropriate

The Court considers whether the Magistrate Judge erred by recommending against the issuance of a COA.  The standard is set forth in *Buck v. Davis*, 137 S.Ct. 759 (2017), which states that the "only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  137 S.Ct.. at 773 (citing *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").

The Court agrees with the Magistrate Judge and finds that Petitioner has failed to demonstrate that reasonable jurists would find the Court's assessment of his constitutional claims debatable or wrong.  CV Doc. 11 at 14 (citing *Slack,* 529 U.S. at 484).  This Court is unable to conclude that the state court's adjudication was contrary to clearly established federal law or was otherwise an unreasonable determination of the facts of this case.  28 U.S.C. § 2254(d).  As such, the Court finds it was not error for the Magistrate Judge to recommend against the issuance of a COA.

---

this vein, counsel determined that the recorded statement of the victim's mother was preferable to her live testimony, and had Petitioner stand before the jury to show that he wasn't "tall" and "skinny" as R.S. described, and that he lacked the tattoos that R.S. described.  Trial counsel's decisions support the state habeas judge's conclusion that Petitioner did not suffer ineffective assistance of counsel.

6.  CONCLUSION

    **IT IS THEREFORE ORDERED** that

1.  Petitioner Randy Salgado's *Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition* (**Doc. 23**) are **OVERRULED**,

2.  The *Magistrate Judge's Proposed Findings and Recommended Disposition* (**Doc. 22**) is **ADOPTED**,

3.  Petitioner Randy Salgado's *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* (Doc. 1) is **DENIED** and **DISMISSED WITH PREJUDICE**, and

4.  A Certificate of Appealability is **DENIED**.


SENIOR UNITED STATES DISTRICT JUDGE